**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

SHAWN L. JACOBS,

      Petitioner,

v.                                                                  CIV. NO. 04-0551 MV/WPL

MO BRAVO and THE
ATTORNEY GENERAL
OF NEW MEXICO,

      Respondents.

**PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

Shawn L. Jacobs was convicted of murder and several other offenses. He was sentenced to life imprisonment plus 69½ years. [Doc. 9 Ex. P] After pursuing state appellate and collateral relief, Jacobs filed a petition for writ of habeas corpus in this Court. The matter is before me now on the state court record, Jacobs's petition [Doc. 1], Respondents' motion to dismiss [Doc. 10], and Jacobs's response [Doc. 12]. For the reasons that follow, I recommend that Respondents' motion to dismiss be granted.

**FACTUAL AND PROCEDURAL BACKGROUND**

On October 24, 1994, the victim and two friends, Kyra Parmeter and Jackie Garcia, left their high-school early and went to the mall. [Tr. X/63-66][1] The victim was wearing a Dallas Cowboys pullover jacket and a crucifix on a chain. [Tr. X/71] At the mall, she bought a t-shirt that had "eight ball" on the front and a distinctive design and the words "Smile Now, Cry Later" on the back. She

---

[1] I will use the abbreviation "Tr." for the trial transcript and the abbreviation "RP" for the state record proper.

also stole two identical t-shirts so all three of the friends would have one. [Tr. X/69-70]

The friends accepted a ride home from a man in a new, green Jeep. [Tr. X/77-79] The man was wearing a long, black trench coat and had unusual, big ears that "folded over." [Tr. X/81-83] He told them that he had attended Highland High School, but had been expelled for pulling a gun on some "jocks." [Tr. X/96-97] The man dropped off Parmeter and Garcia at their homes. [Tr. X/104-05, Tr. XI/15-16]

That evening, a passerby discovered a Jeep in a ravine and the victim's dead body nearby. The Jeep had a temporary spare as the left front tire. [Tr. XI/60-74] The victim had been shot in the back of the head, and there was an unusually large amount of black powder residue around the entrance wound. [Tr. XIII/24-28] The evidence was conflicting as to whether the victim had been sexually assaulted. [Tr. XIII/36-40, Tr. XV/80, 110, 120] Her Cowboys jacket, crucifix, and eight ball t-shirt were not found at the scene. [Tr. XI/138]

Parmeter and Garcia identified Jacobs as the man who picked them up. [Tr. X/126, Tr. XI/30] Jacobs had been released from prison three days before the murder and was living at his father's house, about a mile and a half from the crime scene. [Tr. XII/5-6, Tr. XIV/63] A boarder named Daniel Bryan Banker also lived at the house. [Tr. XII/1-4] He testified that two days before the murder he refused to give Jacobs a ride. Jacobs left and returned five minutes later with a new Jeep, claiming he borrowed it from a friend. [Tr. XII/14] The next day, Jacobs replaced a flat tire on the Jeep with a spare. [Tr. XII/19-20] Evidence at trial established that the Jeep had been stolen from a local dealership. [Tr. XI/139-43]

Banker stated that on the night of the murder Jacobs came home on foot, wearing a black trench coat and an eight ball t-shirt, which Jacobs claimed was a gift from a friend. He had a gun with

2

him. That week, Jacobs began wearing a Cowboys jacket. [Tr. XII/12, 21-30, Tr. XIII/105]

After the murder, the police began surveillance of Jacobs's father's house. During this surveillance, an officer observed Jacobs wearing a Cowboys jacket. [Tr. XIV/15-18] Several other people also observed Jacobs with the Cowboys jacket after the murder, as well as with the eight ball t-shirt. [Tr. XII/81-83, 109, 113-117, Tr. XIII/82-85] Two days after the murder, Jacobs gave the victim's crucifix to a woman, claiming he found it in a parking lot. [Tr. X/48-49, Tr. XII/78, 81-83] The State also presented evidence that Jacobs had been expelled from Highland High School for pulling a plastic gun on some athletes, that he was known for having unusually big and foldable ears, and that he tried to sell a black-powder pistol at a bargain price after the murder. [Tr. XII/95-96, 98, 118-20, 196, Tr. XIII/75, 96-98]

During a search of Jacobs's father's house, police recovered a Cowboys jacket and eight ball t-shirt. [Tr. XIII/118, Tr. XIV/38-44] They also found a black-powder pistol tucked underneath the lining of a waterbed. [Tr. XIV/48] DNA testing indicated that blood on the muzzle of the pistol was likely the victim's. [Tr. XIV/107]

Jacobs attempted to escape while he was incarcerated pending trial on murder and related charges. [Tr. XIV/188, 203-09] He was charged with escape from jail and escape from a peace officer, and these new charges were joined with the other charges for trial. [RP 418] The jury found Jacobs guilty of willful and deliberate first-degree murder, felony murder, kidnapping, attempted second-degree criminal sexual penetration, armed robbery, two counts of tampering with evidence, unlawful taking of a motor vehicle, receiving or transferring a stolen vehicle, possession of a firearm or other destructive device by a felon, escape from jail, and escape from a peace officer. [RP 833-45] He was sentenced to death plus 69 ½ years in prison. [Doc. 9 Ex. A]

On appeal, the New Mexico Supreme Court affirmed the conviction, but reversed the death sentence. [Doc. 9 Ex. H] On remand, Jacobs was sentenced to life imprisonment plus 69 ½ years. [Doc. 9 Ex. P]

**STANDARD OF REVIEW**

The New Mexico Supreme Court's opinion includes a substantive discussion of several of the issues in Jacobs's federal habeas petition. [Doc. 9 Ex. H] Jacobs raised his other federal issues in a state habeas petition.[2] [Doc. 9 Ex. CC] The state habeas court summarily denied habeas relief, stating that Jacobs's claims were "without merit." [Doc. 9 Ex. DD, FF] The state courts thus adjudicated the merits of Jacobs's claims. *See Jenkins v. Artuz*, 294 F.3d 284, 291 (2d Cir. 2002) (summary decision stating claims were "without merit" was an adjudication on the merits); *Aycox v. Lytle*, 196 F.3d 1174, 1177 (10th Cir. 1999) (summary decision stating "'as a matter of law, Petitioner is not entitled to relief'" was an adjudication on the merits). Therefore, this Court may not grant a writ of habeas corpus unless the adjudication of a claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Under the "contrary to" clause of section 2254(d)(1), the writ may issue if the state court arrived at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decided a case differently than the Court has on a set of materially indistinguishable facts.

---

[2] Respondents concede that Jacobs exhausted his claims in state court. [Doc. 9] *See* 28 U.S.C. § 2254(b)(3).

*Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).  Under the "unreasonable application clause," the writ may issue if the state court identified the correct governing legal principle from the Supreme Court's decisions but unreasonably applied that principle to the facts of the case.  *Id.* at 413.

## DOUBLE JEOPARDY

In his first issue, Jacobs argues that his separate convictions and sentences for felony murder, kidnapping, and attempted criminal sexual penetration (CSP) violate the Double Jeopardy Clause.[3]

The Double Jeopardy Clause protects against multiple punishments for the same offense.  *See Missouri v. Hunter*, 459 U.S. 359, 366 (1983).  But "[w]ith respect to cumulative sentences imposed in a single trial, the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended."  *Id.*  Accordingly, to determine whether conduct constitutes a single offense or separate offenses for double jeopardy purposes, this Court must defer to the state court's interpretation of the relevant statutory provisions.  *Lucero v. Kerby*, 133 F.3d 1299, 1316-23 (10th Cir. 1998) (applying New Mexico law to resolve habeas petitioner's double jeopardy claim); *see also Hunter*, 459 U.S. at 368 ("We are bound to accept the [State] court's construction of that State's statutes.").

---

[3] Respondents argue that this issue is procedurally defaulted because it was not raised on direct appeal. [Doc. 11 at 6]  I disagree.  In New Mexico, double jeopardy is not waivable and may be raised for the first time in a collateral proceeding.  *See* N.M. STAT. ANN. § 30-1-10 (West 2003); *Swafford v. State*, 810 P.2d 1223, 1226 n.1 (N.M. 1991); *State v. Crain*, 946 P.2d 1095, 1099 (N.M. Ct. App. 1997).  Jacobs raised his double jeopardy claim in his state habeas petition, and the court dismissed it without mentioning procedural default.  [Doc. 9 Ex. CC at 9, DD, FF]  If a state court does not "indicate that a federal constitutional claim is barred by some state procedural rule, a federal court implies no disrespect for the State by entertaining the claim." *County Court of Ulster County v. Allen*, 442 U.S. 140, 154 (1979).  Moreover, as discussed below, Jacobs raised at least part of his double jeopardy argument in his appellate brief. [Doc. 9 Ex. E at 75-78] The State obviously understood that Jacobs was making a double jeopardy argument; it responded that the convictions did not violate double jeopardy principles.  [Doc. 9 Ex. F at 10-15]  Curiously, despite this briefing, the New Mexico Supreme Court characterized Jacobs's argument as relating only to the sufficiency of the evidence.  [Doc. 9 Ex. at H 7-9]

The New Mexico Supreme Court has established a two-part test for determining legislative intent as to multiple punishment. *Lucero*, 133 F.3d at 1316; *see Swafford*, 810 P.2d at 1233-34. First, the court must decide whether the conduct underlying the offenses is unitary--that is, whether the same conduct violates both statutes. If the conduct is not unitary, multiple punishments do not violate the Double Jeopardy Clause. If the conduct is unitary, the court must conduct the second part of the test to determine whether the legislature intended multiple punishments for unitary conduct. *Lucero*, 133 F.3d at 1316; *Swafford*, 810 P.2d at 1234. This part of the test generally includes a *Blockburger* analysis. *See Lucero*, 133 F.3d at 1316-17; *Swafford*, 810 P.2d at 1234; *see also Blockburger v. United States*, 284 U.S. 299, 304 (1932). If, after conducting this analysis, the court determines that each offense requires proof of a fact that the other does not, a presumption arises that the legislature intended multiple punishments. *See Blockburger*, 284 U.S. at 304; *Swafford*, 810 P.2d at 1234.

In his brief before the New Mexico Supreme Court, Jacobs argued that there was insufficient evidence of a kidnapping distinct from the attempted CSP. He referred to "double jeopardy principles" and cited several New Mexico cases dealing with double jeopardy. [Doc. 9 Ex. E at 75-78] The New Mexico Supreme Court described this only as a sufficiency-of-the-evidence question, but relied on double jeopardy cases to conclude that the evidence was sufficient. [Doc. 9 Ex. H at 7-9] The court concluded "that the crime of kidnapping was complete before either the act of attempted criminal sexual penetration or the act of murder began" and that "there was sufficient evidence of an independent factual basis for each guilty verdict on the charges of kidnapping, attempted criminal sexual penetration, and murder." [Doc. 9 Ex. H at 8-9] By concluding that there was an "independent factual basis" for each crime, the court in effect concluded that the conduct

underlying the offenses was not unitary. *See Swafford*, 810 P.2d at 1234 (indicating that conduct is not unitary if the jury reasonably could have found "independent factual bases" for the offenses).

The jury instructions allowed the jury to find that Jacobs committed kidnapping by either force or deception, and the verdict does not indicate which of these theories was relied upon by the jury. [RP 712, 836] Therefore, the kidnapping conviction may be upheld only if neither of the theories would result in double jeopardy. *See State v. Foster*, 974 P.2d 140, 148 (N.M. 1999).

As the New Mexico Supreme Court noted, the jury could have found that Jacobs used deception to kidnap the victim by luring her into his car under the pretense of taking her home, intending all the while to rape her. [Doc. 9 Ex. H at 8] Under this scenario, the kidnapping was complete when Jacobs restrained the victim by deception with the intent to commit CSP. *See State v. McGuire*, 795 P.2d 996, 998, 1001 (N.M. 1990). The attempted CSP occurred at a different location some time after Jacobs dropped off Parmeter and Garcia. Thus, the conduct underlying the kidnapping by deception and the attempted CSP was not unitary because it was separated by time and distance. *See Swafford*, 810 P.2d at 1234 (to determine whether conduct was unitary, courts should consider whether illegal acts were separated by time or distance, as well as the quality and nature of the acts).

The New Mexico Supreme Court also suggested that the jury could have found that Jacobs used force to kidnap the victim by making her walk to the arroyo where her body was found. [Doc. 9 Ex. H at 8] The victim's mother testified that the pants the victim was wearing were so tight around the ankles that it would be difficult to take them off without removing her shoes. [Tr. X/59] These pants were found, neatly folded, on the floorboard of the Jeep. [Tr. XI/64-65, 117] The victim's bra was found just outside the Jeep. [Tr. XI/108] The victim was lying approximately 300

7

feet away, wearing only her panties, socks, and shoes. [Tr. XI/115, 131] She had sand and gravel in the back of her panties, scratches on her back, and a laceration on her face. [Tr. XI/119, XIII/16-19] The State's evidence further indicated that the victim was shot where she was found. [Tr. XI/125-27] From this evidence, the jury could have inferred that Jacobs forced the victim to walk to the place where she was killed. Under this scenario, the conduct underlying the two offenses was not unitary because the force used for the attempted CSP was not the same force used to accomplish the kidnapping. *See McGuire*, 795 P.2d at 999; *Crain*, 946 P.2d at 1100-01.

Even if the conduct underlying the kidnapping and the attempted CSP was unitary, application of the second part of the New Mexico test indicates that the legislature intended multiple punishments in this situation. The kidnapping conviction required proof that Jacobs took, restrained, or confined the victim by force or deception. [RP 712] The attempted second-degree CSP conviction did not require such proof. [RP 721] *See State v. Singleton*, 691 P.2d 67, 71 (N.M. Ct. App. 1984). On the other hand, the attempted second-degree CSP conviction required proof that Jacobs attempted to cause the unlawful sexual penetration of the victim. [RP 721] The kidnapping conviction did not require such proof. [RP 712] *Compare* N.M. STAT. ANN. § 30-4-1(A) (West Supp. 2004), *with id.* § 30-9-11(A). Therefore, there is a presumption that the legislature intended multiple punishments for unitary conduct that constitutes both of these offenses. This presumption is not conclusive. *See Swafford*, 810 P.2d at 1234. In *Crain*, the New Mexico Court of Appeals held that the legislature did not intend for kidnapping to be charged out of every CSP in the third degree "without some force, restraint, or deception occurring either before or after the sexual penetration." 946 P.2d at 1101. *But cf. State v. Tsethlikai*, 785 P.2d 282, 285 (N.M. Ct. App. 1989) ("Because CSP II and kidnaping address different social norms, consecutive sentences for those two crimes is, in general,

8

permissible."). Assuming this rule applies to convictions for kidnapping and attempted CSP in the second degree, it was satisfied here because there was evidence of force, restraint, and deception occurring before and after the attempted CSP.

Jacobs also contends that his convictions for felony murder and kidnapping amounted to double jeopardy. The New Mexico Supreme Court has held that a person "cannot be convicted of and sentenced for both felony murder and the underlying felony" based on unitary conduct. *State v. Contreras*, 903 P.2d 228, 233 (N.M. 1995). Jacobs's felony murder conviction was predicated on kidnapping. [RP 710, 835] Therefore, if his conduct was unitary, convictions for both of these offenses constitute double jeopardy.

As noted above, the State presented evidence that the victim was shot and killed where she was found. The jury could have inferred that the kidnapping occurred when Jacobs deceived the victim into getting into the Jeep or when he forced her to walk to the place where she was killed. Each of these alternatives is separated by time and space from the murder. Accordingly, the conduct underlying the offenses of kidnapping and felony murder was not unitary. *See State v. Ortega*, 817 P.2d 1196, 1213-14 (N.M. 1991).

From this analysis, it is apparent that the New Mexico courts' rejection of Jacobs's double jeopardy claim did not involve an unreasonable application of clearly established federal law.

### ALLEGED USE OF FALSE EVIDENCE

The victim's mother testified that she wrote the victim's name with washable ink on the Cowboys jacket in two places: on the tag and on the lining of one of the pockets. During her testimony, she noted that the tag had been cut off and that she could not see the name inside the pocket. [Tr. X/50-52]

In his second issue, Jacobs claims that while he and a prosecutor were alone in the courtroom after the mother testified, he saw the prosecutor write inside a pocket of the jacket. Shortly thereafter, Kyra Parmeter testified on redirect examination that she could see some of the letters spelling the victim's name inside the pocket. Parmeter noted that the letters were "[v]ery faded." [Tr. X/163-64] Detective Hagel later testified that although he looked for the victim's name inside the pocket before he placed the jacket into evidence, he was unable to see it. He stated that he was subsequently able to see some of the letters. The letters were so faint that the light had to hit the jacket "at a certain angle for the letters to be visible at all." [Tr. XIV/37-45]

A prosecutor's knowing use of false evidence deprives a defendant of due process and warrants a new trial if there is a reasonable likelihood that the false evidence affected the verdict. *See Giglio v. United States*, 405 U.S. 150, 153-54 (1972); *Napue v. Illinois*, 360 U.S. 264, 269 (1959); *Romano v. Gibson*, 239 F.3d 1156, 1175 (10th Cir. 2001). Jacobs has not established that the prosecutor knowingly used false evidence. There is nothing in the record to support his assertion that the prosecutor wrote the victim's name in the jacket. The mere fact that Detective Hagel and the victim's mother were initially unable to see the name is insufficient to establish that anyone tampered with the jacket, especially considering the testimony that the lettering was difficult to see.

Assuming the prosecutor did write the victim's name in the jacket, the state habeas court could have concluded that there was not a reasonable likelihood that the false evidence affected the verdict. Even without the lettering, the State's evidence established that the jacket was the victim's. It was identified as such by her mother. The State also established that the victim was wearing the jacket on the day of her murder, but that it was not found at the murder scene. The state habeas court's dismissal of this claim did not involve an unreasonable application of clearly established

10

federal law.

### SUPPRESSION OF EVIDENCE

Jacobs's third, seventh, and eighth issues relate to the denial of his motion to suppress.[4]

In his eighth issue, Jacobs argues that an illegal protective sweep was conducted at his father's house. A protective sweep is a quick and limited search of premises, incident to an arrest, to protect the officers' safety. It is constitutionally permissible when the officers have a reasonable belief based on specific and articulable facts that, taken together with rational inferences from those facts, warrant the officers in believing that the area harbors an individual posing a danger. *Maryland v. Buie*, 494 U.S. 325, 327 (1990).

Detective Torgrimson testified that when he arrested Jacobs at an intersection near his father's house, Jacobs asked to take the vehicle he was driving back to the house. Torgrimson agreed. [Tr. I/16-17] Although Jacobs said that no one was in the house, Detective Torgrimson did not believe him, because he had seen two men go into the house that day, but had only seen one of them leave. The police had also been informed that there were guns in the house. [Tr I/17-18, 20-21, 23-24] After reviewing these facts and considering *Buie*, the New Mexico Supreme Court held that the

---

[4] When the state has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a habeas petitioner may not relitigate that claim in federal court. *Stone v. Powell*, 428 U.S. 465, 494 (1976). Although Respondents have not asserted *Stone* as a bar to Jacobs's suppression issues, *Stone* may be raised *sua sponte*. *See Thomas v. Cowley*, No. 90-6105, 1991 WL 151773, at **4 (10th Cir. Aug. 8, 1991) (unpublished) (citing *Davis v. Blackburn*, 803 F.2d 1371, 1372 (5th Cir. 1986)). Jacobs raised some of his Fourth Amendment issues in motions to suppress and others for the first time in his state habeas application. [RP 226-34, Doc. 9 Ex. CC at 11-12, 17-18] The trial court denied the motions to suppress after an evidentiary hearing, and the New Mexico Supreme Court thoroughly reviewed the trial court's ruling. [Tr. I, Doc. 9 Ex. H at 11-15] Even though the issues raised in the habeas petition were dismissed without a hearing, it could be argued that Jacobs was given an opportunity for full and fair litigation of all his Fourth Amendment claims. *See Miranda v. Cooper*, 967 F.2d 392, 401 (10th Cir. 1992) (holding that *Stone* barred consideration of a claim because the petitioner did not raise it in state court despite the opportunity to do so). But given the lack of a hearing on the habeas petition and Respondents' failure to raise *Stone*, I will not apply *Stone* here.

protective sweep was justified. [Doc. 9 Ex. H at12-13]   This holding was not an unreasonable application of clearly established federal law. *See, e.g., United States v. Cavely*, 318 F.3d 987, 995-96 (10th Cir. 2003) (discussing situations in which a protective sweep of a home may be justified when the arrest occurred outside the home).

After conducting the protective sweep, the officers obtained a search warrant.  In his seventh issue, Jacobs argues that evidence seized pursuant to the search warrant should have been suppressed because the affidavit supporting the warrant contained a false statement.  When the affidavit supporting a search warrant contains a false statement that was made knowingly and intentionally or with reckless disregard for the truth, evidence obtained pursuant to the warrant must be excluded if the affidavit's remaining content is insufficient to establish probable cause. *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978).

Jacobs claims that in the affidavit for a search warrant, Detective Shawn stated that Detective Torgrimson observed two rifles hanging on the wall during the protective sweep.  Detective Torgrimson testified, however, that he only observed the Cowboys jacket. [Tr. I/18-19] Jacobs also claims that Shawn stated in the affidavit that a parol officer had observed weapons in June of 2004, but Shawn failed to state that those weapons were taken pursuant to a search warrant in June and were never returned.

Jacobs has not shown that Detective Shawn deliberately or recklessly included a false statement in the affidavit.  I note that another detective testified that he observed rifles during the protective sweep, but he did not remember telling Shawn about this observation. [Tr. I/23]  More importantly, Jacobs admits in his petition that two rifles were seized during the execution of the warrant. [Doc. 1 at 6]  Thus, it appears that the underlying fact--that there were two rifles in the

12

house--was true. The state habeas court's rejection of this claim did not involve an unreasonable application of clearly established federal law. *See, e.g., United States v. Hampton*, 633 F.2d 927, 929 (10th Cir. 1980) (holding that misidentification of officer to whom defendant made confession was not fatal because content of the confession was accurate).

In his third issue, Jacobs argues that all of the evidence seized pursuant to the warrant should have been suppressed because the officers seized items that were not listed in the warrant. On direct appeal, Jacobs pointed out that the officers seized a photo album and a bottle of chloroform, neither of which were listed in the warrant. [Doc. 9 Ex. E at 35] The New Mexico Supreme Court stated that the chloroform was not admitted into evidence and that the officers acted reasonably in seizing the photo album because it was found inside the Cowboys jacket. The court then held that blanket suppression of all the seized evidence was not called for because the officers did not exhibit a flagrant disregard for the terms of the warrant. [Doc. 9 Ex. H at 15]

In his state and federal habeas petitions, Jacobs has asserted that the officers seized nine additional items that had no nexus to the items listed in the warrant. [Doc. 9 Ex. CC at 12] He argues that the seizure of these items demonstrates a flagrant disregard for the terms of the warrant.

The Tenth Circuit has held that when officers exhibit a flagrant disregard for the terms of the warrant, all seized evidence--even items listed in the warrant--must be suppressed. *United States v. Foster*, 100 F.3d 846, 849 (10th Cir. 1996). The United States Supreme Court, however, has not gone so far. The Court has held that "there is certainly no requirement that lawfully seized evidence be suppressed" merely because some items were improperly seized. *Waller v. Georgia*, 467 U.S. 39, 43 n.2 (1984). Therefore, the state courts could not have violated clearly established federal law by rejecting this claim. *See* 28 U.S.C. § 2254(d)(1); *Williams*, 529 U.S. at 381-82.

### JOINDER OF ESCAPE CHARGES

In his fourth issue, Jacobs asserts that the trial court deprived him of a fair trial by trying the escape charges with the underlying offenses. The New Mexico Supreme Court held that Jacobs failed to show that his right to a fair trial was prejudiced by the joinder. The court noted that even if the escape charges had not been tried with the other charges, evidence of the escape would have been admissible to show consciousness of guilt and future dangerousness. [Doc. 9 Ex. H at 3-6]

Assuming that the charges should not have been joined under state law, misjoinder rises to the level of a constitutional violation only if it results in prejudice so great as to deny a defendant his right to a fair trial. *United States v. Lane*, 474 U.S. 438, 446 n.8 (1986). Therefore, to obtain habeas relief, Jacobs must show that the joinder actually rendered his trial fundamentally unfair. *Lucero*, 133 F.3d at 1314.

Given the New Mexico Supreme Court's holding that evidence of the escape would have been admissible without the joinder, Jacobs cannot show that the joinder rendered his trial fundamentally unfair. *See King v. Strickland*, 714 F.2d 1481, 1494 (11th Cir. 1983) (holding that joinder of escape charge with other offenses did not render trial fundamentally unfair where evidence of the escape would have been admissible in the absence of joinder), *vacated on other grounds*, 467 U.S. 1211 (1984); *see also Brinlee v. Crisp*, 608 F.2d 839, 850 (10th Cir. 1979) (holding that admission of escape evidence to show consciousness of guilt did not infringe any federal constitutional right); *Gribble v. Johnson*, 8 F. Supp. 2d 942, 954 (S.D. Tex. 1998) (holding that state court's decision that escape was relevant to future dangerousness was not contrary to clearly established federal law), *aff'd*, 196 F.3d 1258 (5th Cir. 1999). The state courts' rejection of Jacobs's joinder argument did not involve an unreasonable application of clearly established federal law.

### EXCUSAL OF JURORS

In his fifth issue, Jacobs argues that the trial court deprived him of a fair and impartial jury by excusing four prospective jurors because of their religious beliefs. Jacobs acknowledges that the jurors indicated that their religious beliefs would not permit them to impose the death penalty under any circumstance. [Doc. 1 at 8, Doc. 9 Ex. CC at 15, Tr. V/33-37, 57-61, 197-202, Tr. VII/140-43] The New Mexico Supreme Court held that the prospective jurors were properly excused because they would not be able to follow either the jury instructions or their oaths. [Doc. 9 Ex. H. at 6-7]

A prospective juror may be excluded for cause because of his or her views on capital punishment if the views would prevent or substantially impair the performance of the duties of a juror in accordance with the court's instructions and the juror's oath. *Wainwright v. Witt*, 469 U.S. 412, 424 (1985); *see also Morgan v. Illinois*, 504 U.S. 719, 728 (1992) ("[A] juror who in no case would vote for capital punishment, regardless of his or her instructions, is not an impartial juror and must be removed for cause."). Because the prospective jurors indicated that they would not be able to impose the death penalty under any circumstance, they would not be able to follow the instructions or their oaths. Thus, the New Mexico Supreme Court properly applied clearly established federal law in rejecting Jacobs's argument.

### HABITUAL OFFENDER SENTENCING

In his sixth issue, Jacobs argues that the trial court erred by adding thirty-seven years to his sentence under the New Mexico habitual offender statute. It is difficult to understand the exact nature of this complaint. Jacobs asserts that the enhancement was improper because most of his crimes were committed in the course of a single event. It thus appears that he believes some of the crimes for which he was convicted in this case were used to enhance his sentences for other crimes

15

prosecuted in this case. On the contrary, the State filed a supplemental information, alleging that Jacobs had two prior felony convictions. [RP 1172-74] It was these prior offenses that were used to enhance his sentence. [Doc. 9 Ex. P]

In any event, Jacobs has not identified any federal constitutional right that the enhancements violated, and state sentencing rules generally do not raise federal constitutional issues that are cognizable in a habeas proceeding. *See Dellinger v. Bowen*, 301 F.3d 758, 764 (7th Cir. 2002); *Niemann v. Parratt*, 596 F.2d 316, 317 (8th Cir. 1979). Therefore, the state habeas court did not violate clearly established federal law in rejecting this claim.

## INEFFECTIVE ASSISTANCE OF COUNSEL

In his ninth issue, Jacobs claims that he was denied effective assistance of counsel because his attorneys only discussed the case with him once and that discussion occurred a year and a half before the trial; his attorneys would not call witnesses or ask the questions that Jacobs requested; and one of his attorneys told him to "take the plea deal, go to prison, and then escape or kill yourself." [Doc. 1 at 11]

To establish ineffective assistance of counsel, a habeas petitioner must satisfy a two-part test. First, he must show that counsel's performance fell below an objective standard of reasonableness. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). Judicial scrutiny of counsel's performance is highly deferential; thus, the petitioner must overcome the presumption that the challenged action might be considered sound trial strategy. *Id.* at 689. Second, the petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.* at 694.

Assuming that Jacobs's allegations are true and that the attorneys' actions could not be deemed reasonable trial strategy, Jacobs has not shown how these actions negatively affected the trial. Because Jacobs has not established a reasonable probability that the result of the proceeding would have been different but for the attorneys' deficient performance, the state courts' rejection of the ineffectiveness claim did not violate clearly established federal law.

### CUMULATIVE ERROR

In his tenth issue, Jacobs argues that the cumulative effect of the other nine issues amounts to fundamental error, requiring reversal of his convictions. Given my rejection of those other issues, this issue is also unavailing. *See Jones v. Stotts*, 59 F.3d 143, 147 (10th Cir. 1995) (noting that cumulative error analysis only applies to the effects of errors, rather than non-errors).

### RECOMMENDED DISPOSITION

For the reasons stated herein, I recommend that Respondents' Motion to Dismiss the Application for Writ of Habeas Corpus [Doc. 10] be granted, and that the Petition for Writ of Habeas Corpus [Doc. 1] be dismissed with prejudice.

**THE PARTIES ARE NOTIFIED THAT WITHIN 10 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636 (b)(1). **A party must file any objections with the Clerk of the District Court within the ten day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**

_William P. Lynch_
WILLIAM P. LYNCH
UNITED STATES MAGISTRATE JUDGE